UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.

CRIMINAL ACTION NO. 5:24-cr-00066

MERRICK RICE

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Merrick Rice's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) [ECF 31], filed April 16, 2025, to which the Government responded in opposition [ECF 33] on April 24, 2025.[1]

### I.

On May 7, 2024, Mr. Rice pled guilty to a single-count Information, charging him with aiding and abetting structuring, in violation of 31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2. On October 21, 2024, Mr. Rice was sentenced to 15 months imprisonment, followed by a three-year

---

[1] Also pending is Mr. Rice's Motion to Seal [ECF 32], in which he requests a wholesale seal of his medical records offered in support of his compassionate release motion. "[W]hile a district court 'has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interest,' the 'presumption' in such cases favors public access." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (quoting *In re Knight Publishing Co.*, 743 F.2d 231, 235 (4th Cir. 1984)); *see also Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988) ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances"). Thus, before granting a sealing request, the Court must "consider less drastic alternatives to sealing the documents." *Id.* Inasmuch as Mr. Rice's medical conditions and supporting records are central to the Court's decision, he is unable to overcome the strong presumption of public access. The Court will direct, however, that any personal identifiers under *Federal Rule of Civil Procedure* 5.2 be redacted by the Clerk prior to spreading the documents on the public record and that the documents not be made available over the Internet. Accordingly, Mr. Rice's Motion to Seal [**ECF 32**] is **DENIED**.

term of supervised release. He is currently serving his sentence at FMC Lexington, with an anticipated release date of October 26, 2025. Mr. Rice now seeks compassionate release due to (1) the Bureau of Prisons' ("BOP") purported failure to adequately manage his diabetes, neuropathy, and hypothyroidism, and (2) the recent loss of his family restaurant business from flooding. [ECF 31 at 5-6]. He contends he has properly exhausted his administrative remedies inasmuch as 30 days have lapsed without a response from the warden to his January 27, 2025, email requesting compassionate release. [*See* ECF 31-1].

Respecting his medical conditions, he asserts the BOP's mismanagement of the same poses a threat to his health and safety, constituting extraordinary and compelling reasons warranting release. [ECF 31 at 5-6]. Specifically, Mr. Rice contends he is unable to adequately manage his insulin pump inasmuch as his "meals are flooded with carbohydrates and highly processed foods[.]" [*Id*.]. He asserts this makes it impossible to calculate his carbohydrate intake and prevents him from inputting the proper dose of insulin needed from his pump. [*Id*.]. He further contends BOP staff are "unwilling or unable to associate the proper dosage of insulin . . . for the pump[,]" rendering it an ineffective treatment for his diabetes. [*Id*.]. He asserts this has resulted in a one-point increase in his A1C level since his incarceration and high glucose readings from "300 to 400 on any given day." [*Id*. at 5-6]. Additionally, Mr. Rice contends the BOP has changed and discontinued his normal neuropathy medication, causing pain and sleepless nights. [*Id.* at 6].

Respecting his recent business loss, Mr. Rice asserts the flood damage has left the family restaurant in need of significant structural repairs, new inventory and furnishings. [*Id*.]. In his absence, the rebuilding process has fallen on his wife and 78-year-old father. [*Id.*]. He maintains the loss of the restaurant has caused his family "significant financial distress" and constitutes another extraordinary and compelling reason warranting his release. [*Id*.].

The Government opposes release. [ECF 33]. It contends Mr. Rice has failed to adduce sufficient evidence demonstrating exhaustion inasmuch as there is no indication the warden actually received his email request. [*Id*. at 4-5]. Even assuming proper exhaustion, however, the Government maintains Mr. Rice's medical conditions and/or family circumstances fail to amount to extraordinary and compelling reasons justifying his release. [*Id*. at 6-8].

## II.

The First Step Act (the "Act") amended 18 U.S.C. § 3582(c)(1)(A) to expand access to compassionate release to incarcerated individuals. Prior to enactment, a court could only consider compassionate release on motion by the BOP. The Act "removed the BOP from that gatekeeping role, authorizing defendants themselves to file motions for sentence reductions." *United States v. McCoy*, 981 F.3d 271, 271 (4th Cir. 2020). Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), the defendant must first exhaust the administrative process established by the BOP or allow "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

To grant an inmate's motion for compassionate release or sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the court must (1) find that extraordinary and compelling reasons warrant a sentence reduction, and (2) consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). The Act "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 597 U.S. 481, 484 (2022). However, this broad discretion "does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence . . . counsels against providing relief." *Id*. at 502. Rather, "[i]t is only when Congress or the Constitution limits the

3

scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Id*. at 486-87; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (holding that when analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion in conducting [its] analysis.").

In April 2023, the U.S. Sentencing Commission promulgated amendments to the federal sentencing guidelines that took effect on November 1, 2023. Among those amendments was a revision to Section 1B1.13(a) authorizing a movant to file a motion under 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 further provides any of the following circumstances or combination thereof constitute extraordinary and compelling reasons: (1) the medical circumstance of the defendant, including, *inter alia*, "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," (2) the defendant's age, (3) the defendant's family circumstances, (4) the defendant is a victim of abuse, (5) other circumstances similar in gravity to those previously listed, or (6) the defendant received of an unusually long sentence. *See* U.S.S.G. 1B1.13(b)(1)(C)-(6).

If an inmate demonstrates extraordinary and compelling reasons for release, the court must then consider the § 3553(a) sentencing factors in deciding whether to exercise its discretion to reduce the inmate's sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. High*, 997 F.3d 181, 187 (4th Cir. 2021). These factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the

4

defendant," and "provide the defendant with . . . training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a); *see High*, 997 F.3d at 187.

## III.

### A. *Request to Warden*

Before considering the merits of Mr. Rice's motion, the Court will consider whether he has satisfied the statute's threshold requirements. Title 18 U.S.C. § 3582(c)(1)(A) "outlines two routes for requesting compassionate release in the district court, one of which does not require exhaustion of administrative remedies." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022) (internal citations and quotations omitted). As noted, "the defendant may move for compassionate release 'after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf *or* the lapse of 30 days from the receipt of such request by the warden, *whichever is earlier*.'" *Id*. (emphases in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). Simply put, "the threshold requirement to file a compassionate release motion is satisfied if a defendant requests the [BOP] to bring a motion on [his] behalf and *either* fully exhausts all administrative rights to appeal the [BOP]'s decision *or* waits 30 days from the date of [his] initial request." *Id*. (emphases in original) (internal citations and quotations omitted).

Mr. Rice proceeds via the second route. He has attached to his motion a January 27, 2025, email to the Warden requesting compassionate release. [ECF 31-1]. The Government does not contest the requisite 30 days lapsed prior to Mr. Rice seeking relief in the district court. Instead, the Government contends Mr. Rice has failed to demonstrate the email was actually received by the warden. While recognizing the recipient of the email is listed as "Warden," the Government maintains the same is insufficient to show actual receipt, especially given that "[n]o name or email address for 'Warden' is shown." [ECF 33 at 5]. The assertion is unpersuasive. It is

5

safe to assume an email communication sent from an inmate to the warden using a BOP regulated means of communication would actually be received by the recipient. Moreover, the email was clearly sent as it is not only dated, but also time stamped. [*Id*.]. Inasmuch as 30 days have lapsed since the January 27, 2025, email and the filing of the instant Motion on April 16, 2025, the Court concludes Mr. Rice has satisfied § 3582(c)(1)(A)'s threshold requirement. *See United States v. Carter*, 469 F. Supp. 3d 583, 588 (S.D.W. Va. 2020) (Goodwin, J.) (finding "it appropriate to assume . . . the date the request was sent . . . is the date received.").

### B. *Extraordinary and Compelling Reasons*

As noted above, Section 1B1.13 recognizes certain medical circumstances constituting extraordinary and compelling reasons, including when a defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.3(b)(1)(C). Mr. Rice suffers from diabetes, neuropathy, and hypothyroidism, all of which require long-term, specialized care and, if left untreated or improperly managed, "could, and most likely [would], compromise his health." [ECF 32-2 at 2]. He offers no supporting evidence indicating he is being deprived of the necessary medical care for these conditions.

Respecting his diabetes, Mr. Rice alleges his prison meal offerings have made it "impossible" to manage his diabetes by way of his insulin pump. [ECF 31 at 5]. He further asserts BOP medical staff are "unwilling or unable to associate the proper dosage of insulin medicine for the pump; therefore, making the insulin pump ineffective treatment for Mr. Rice's diabetes." [*Id*.]. He also contends he has not seen an endocrinologist or specialist capable of assessing his diabetes, or the effectiveness of his insulin pump under his current circumstances. [*Id*.]. His assertions are directly belied by his BOP medical records offered in support of his motion. [*See* ECF 32-1]. Since

beginning his term of incarceration at FMC Lexington -- a BOP medical facility -- on December 19, 2025, Mr. Rice has been thoroughly assessed by medical staff on at least four separate occasions for his diabetes, neuropathy, and/or his hypothyroidism. [*See id*.]. Moreover, the primary concern during each assessment has been to ensure proper treatment and management of his diabetes.

For instance, his most recent treatment note from February 12, 2025, indicates Mr. Rice had "no complaints," and "per [his] A1C[,] [was] taking his meds as prescribed." [*Id*. at 6]. While the treatment note references a high A1C reading of 8.2 from January 2, 2025, -- a mere two weeks into his incarceration -- it is apparent the goal of his treatment plan has been to remedy the same.[2] Indeed, the treatment note states the "need to decrease HbA1C further," and provides Mr. Rice was counseled on improving his blood sugar control through better food choices, with specific reference to his "poor commissary purchases." [*Id*.]. His recent medical records thus suggest his elevated glucose levels may be more closely linked to his own voluntary, dietary decisions rather than the prison's standard meal offerings. The record is simply devoid of any evidence Mr. Rice is being denied the necessary and specialized care to treat and/or manage his diabetes. Nor does the record support the assertion that his self-asserted deteriorating health is the result of unmanageable circumstances beyond his control.

Regarding his neuropathy, Mr. Rice asserts the BOP is prescribing him an ineffective medication. [ECF 31 at 6]. According to his medical records, Mr. Rice was previously prescribed Gabapentin, which he reported helped his neuropathy symptoms. [*Id*. at 11]. However,

---

[2] While Mr. Rice contends his A1C has increased one point since his incarceration, his supporting evidence for the same is a medical record reporting his A1C as 7.2% on January 18, 2024, roughly eleven months prior to his entry into BOP custody. The length of time between the 7.2% and 8.2% A1C readings thus tends to undermine his assertion.

that medication was later discontinued because he did not meet the established use criteria. [*Id*. at 6]. In response, his BOP physician recommended Amitriptyline as an alternative. [*Id.*]. Although Mr. Rice expressed Amitriptyline had not worked for him in the past, he was encouraged by his physician to try it again. [*Id.*]. Apart from Mr. Rice's assertion he previously found Amitriptyline ineffective, the record contains no evidence indicating his medical provider has failed to adequately treat his neuropathy. To the contrary, his medical records indicate prompt action from his BOP physician to prescribe an alternative medication for his neuropathy symptoms given the expiration of his prior Gabapentin prescription. At bottom, a review of Mr. Rice's medical records fails to demonstrate he is receiving inadequate treatment for his medical conditions at FMC Lexington so as to render the same an extraordinary and compelling reason warranting his release.

To the extent Mr. Rice contends his recent business loss and ensuing hardships faced by his wife and elderly father constitute extraordinary and compelling family circumstances, the contention is unpersuasive. While Section 1B1.13(b)(3)(A)-(D) recognizes family circumstances of the extraordinary and compelling variety, none of those are present or alleged to be present here. Nor is Mr. Rice's business loss "similar in gravity to" the circumstances described in Sections 1B1.13(b)(1)-(4). While the Court is sympathetic to Mr. Rice's business loss and the challenges being faced by his wife and father in his absence, the circumstances regrettably fail to justify the significant relief he requests.

Even assuming Mr. Rice could demonstrate extraordinary and compelling reasons, the applicable 18 U.S.C § 3553(a) factors weigh against release. Mr. Rice is currently serving a 15-month sentence for aiding and abetting structuring transactions to evade reporting requirements. His projected release date is October 26, 2025. At sentencing, Mr. Rice's minimal criminal record placed him in a criminal history category of I. Nonetheless, he received several

8

enhancements to his offense level, including a two-point enhancement for his leadership role in the criminal activity, resulting in a total offense level of 21. His calculated guideline range was thus 37 to 46 months of imprisonment. But, after consideration of Mr. Rice's charitable services, positive community impact, rehabilitative efforts, genuine remorse, and other extenuating circumstances, the Court varied below the guideline range. A reduction to an already below-guideline range sentence would fail to reflect the seriousness of the offense or promote respect for the law. Nor would it afford adequate deterrence for criminal conduct. The Court also recognizes and commends Mr. Rice's continued rehabilitative efforts while in BOP custody, including his completion of drug education and parenting courses. Though commendable, the efforts fail to tip the scale in favor of release. Mr. Rice's continued incarceration pursuant to the lenient sentence imposed will provide him the necessary time to continue his rehabilitation and preparations for successful reentry.

### IV.

Based on the foregoing discussion, the Court **DENIES** Mr. Rice's Motion for Compassionate Release. [**ECF 31**].

The Clerk is directed to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the United States Marshal.

ENTER: July 21, 2025

Frank W. Volk
Chief United States District Judge